UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEORGE and IRIS NARVAEZ,
*on behalf of themselves and all others similarly situated,*

      Plaintiffs,

CASE NO.: 8:14-cv-01646-VCM-MAP

v.

LAW OFFICES OF ANTONIO DUARTE, III, P.A., *a Florida Profit corporation,* ANTONIO DUARTE, III, *an individual*,

      Defendants.
_____/

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW, the Parties in the above styled action ("the Parties"), by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 23(e), and hereby file this Joint Motion for Preliminary Approval of Class Action Settlement, and state the following in support thereof:

**I.    FACTUAL BACKGROUND / PROCEDURAL HISTORY**

Plaintiffs initiated this action against Defendants on July 3, 2014 by filing their Class Action Complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559, *et seq.* ("FCCPA"). *See,* DE 1, generally. Specifically, Plaintiffs allege that Defendants' use of form debt collection letters violates the FDCPA and FCCPA. *Ibid.* Plaintiffs also filed a motion for class certification with their complaint. DE 4.

1

After Defendants answered the Complaint, the Parties began to discuss the possibility of settlement. Plaintiffs' counsel requested information from Defendants that they believed was necessary to negotiate the terms of a potential class-wide resolution of the case. Defendants' counsel ultimately provided this information. On November 20, 2014, the Parties engaged in mediation. At mediation, the Parties reached an agreement to settle this case on a class-wide basis, subject to court approval. *See,* DE 28. Thereafter, the Parties executed a formal Class Action Settlement Agreement ("the Settlement Agreement") which memorializes the terms of the settlement. *See,* Settlement Agreement, attached hereto as **Exhibit A.**

Through the present Motion, the Parties respectfully request an Order from this Honorable Court: 1) certifying the proposed Class for settlement purposes; 2) preliminarily approving the proposed Settlement Agreement; 3) directing notice to the Class and; 4) setting dates for opt-outs, objections, and a hearing under Federal Rule of Civil Procedure 23(c)(2).

## II. THE COURT SHOULD PRELIMINARILY CERTIFY A SETTLEMENT CLASS UNDER FEDERAL RULES OF CIVIL PROCEDURE 23(a) and 23(b)(3)

The decision whether to certify a class is within the broad discretion of the district court and is reviewed for an abuse discretion. *Klay v. Humana, Inc.,* 382 F.3d 1241, 1251 (11th Cir.2004). In the present case, the Parties seek certification of the proposed class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). "Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *De Leon v. Bank of Am., N.A. (USA)*, 6:09-CV-1251-ORL-28, 2012 WL 2568142, at *7 (M.D. Fla. Apr. 20, 2012) *report and recommendation adopted*, 6:09-CV-1251-ORL-28, 2012 WL 2543586

(M.D. Fla. July 2, 2012). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.*

In cases seeking relief for conduct involving form collection letters alleged to violate the FDCPA and FCCPA, certification of a class action is not unusual. *See, e.g., Gaalswijk-Knetzke v. Receivables Mgmt. Services Corp.*, 8:08-CV-493-T-26TGW, 2008 WL 3850657, at *2 (M.D. Fla. 2008); *Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692 (S.D.Fla.2004); *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697 (M.D.Fla.2000); *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 666-69 (M.D.Fla.1999).  For the reasons outlined below, each of the Rule 23(a) and 23(b)(3) prerequisites to class certification are met.

  **A. The Settlement Class Satisfies the Numerosity Requirement of Rule 23(a)**

To satisfy numerosity, the prospective class must be "so numerous that joinder of the class is impracticable." Fed.R.Civ.P. 23(a)(1). "The Court is given discretion to make assumptions when determining the numerosity of a class." *Fuller,* 197 F.R.D. at 699 (citing *Evans v. U.S. Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir.1983)). While "mere allegations of numerosity are insufficient," Fed.R.Civ.P. 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." *Manno v. Healthcare Revenue Recovery Grp., LLC,* 289 F.R.D. 674, 684 (S.D.Fla.2013).

In the present case, Defendants have identified approximately 633 people who are in the putative class defined as "[a]ll person[s] to whom a letter in substantially the same form as either of the letters attached as Exhibit 'A1-A2' to Plaintiffs' Complaint was sent during the two-year period preceding the filing of Plaintiffs' Complaint through the date of this settlement." *See,*

3

Exhibit "A" at p. 3. The Eleventh Circuit has indicated that less than twenty-one class plaintiffs is generally inadequate to support a finding of numerosity but that more than forty class plaintiffs is generally enough to satisfy the rule. *Stalley v. ADS Alliance Data Sys., Inc.*, 296 F.R.D. 670, 681 (M.D. Fla. 2013) (citing *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986)). Given that there are approximately 633 class members, numerosity has been satisfied as the putative class is "so numerous that joinder of the class is impracticable."

### B.      The Settlement Class Satisfies the Commonality Requirement of Rule 23(a)

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Commonality pertains to the characteristics of the group or class as a whole, unlike typicality which refers to the individual characteristics of the class representative as compared to those of the class members. *Piazza v. Ebsco Indus. Inc.,* 273 F.3d 1341, 1346 (11th Cir.2001) (citing *Prado–Steiman v. Bush,* 221 F.3d 1266, 1279 (11th Cir.2000)). Commonality "does not require complete identity of legal claims." *Johnson v. Am. Credit Co. of Ga.,* 581 F.2d 526, 532 (5th Cir.1978). "In fact, commonality can be satisfied even with some factual variations among class members." *Stalley*, 296 F.R.D. at 681 (citing *Armstead v. Pingree,* 629 F.Supp. 273, 280 (M.D.Fla.1986)).

In the present case, the commonality element is satisfied as the letters at issue are form letters and, as such, the claims of the Plaintiffs and the putative class members originate from the same conduct, and practices and procedures employed by Defendants. *See, e.g., Fuller*, 197 F.R.D. at 700 ("The principle legal issues arising from the collection letters is whether the letters violate the FDCPA and FCCPA. All members of the prospective class could be affected from the issue regarding the letters sent. The Court finds the commonality requirement is satisfied because one common issue is sufficient to meet the commonality requirement of Rule 23.")

### C. The Settlement Class Satisfies the Typicality Requirement of Rule 23(a)

Though the issues of commonality and typicality require separate inquiries, the proof required for each tends to merge. *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996) (citation omitted). As the Eleventh Circuit explained, typicality involves the following:

> A class may be certified only if the claims or defenses of the representative parties are typical of the claims or defenses of the class. The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). The typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories.

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 – 57 (11th Cir. 2009) (internal citations and internal quotation marks omitted).

As noted above, the claims of both the Plaintiffs and the putative class members originate from the same conduct and practices and procedures employed by Defendants. As a result of those practices, Plaintiffs possess the same interest, assert identical claims and seek identical relief as that of the class members. Accordingly, the typicality requirement has been satisfied.

### D. The Plaintiffs and Their Counsel Satisfy the Adequacy Requirement of Rule 23(a)

The final prerequisite of Rule 23(a) requires a showing that the representative party or parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). Generally, the adequacy of the representation depends on two factors: (1) the named plaintiffs' attorney is qualified, experienced, and will competently and vigorously prosecute the action; and (2) the interests of the named plaintiffs are not antagonistic to or in conflict with those of the class. *See, Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 327 (S.D. Fla. 1996)(citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)). Plaintiff and her counsel satisfy these requirements.

With respect to the adequacy of class counsel, Rule 23(a) "'involves questions of ... whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation.'" *Spinelli v. Capital One Bank*, 265 F.R.D. 598, 602-603 (M.D. Fla. 2009) (quoting *Pop's Pancakes, Inc. v. NuCo2*, 251 F.R.D. 677, 683 (S.D. Fla. 2008) (citing *Griffin v. Carlin*, 755 F.2d at 1533). Here, the Parties request the Court to appoint as "Class Counsel" J. Andrew Meyer and Ian Richard Leavengood**,** from the law firm of Leavengood, Dauval, Boyle & Meyer, P.A. (hereinafter, "LeavenLaw").

LeavenLaw is an AV rated consumer litigation firm representing consumers across the state of Florida, in both state and federal court. For nearly forty years, LeavenLaw has represented consumers against creditors, debt collectors and insurance companies. The law firm employs twelve attorneys and maintains offices in St. Petersburg, Tampa, Clearwater, and Sarasota, Florida. LeavenLaw lawyers have appeared on behalf of thousands of consumers in federal and Florida state courts. LeavenLaw lawyers are skilled in the area of unlawful debt collection law, having represented consumers in over 650 unlawful debt collection cases, including ten consumer-based class actions, one of which was certified and defended on appeal, and the majority of the remainder having been confidentially settled as class actions or with class action-like relief. Mr. Leavengood was awarded the preeminent AV® rating by Martindale-Hubbell, as well as have been recognized as a SuperLawyer™, one of Florida's Legal Elite ™, and one of *The Best Lawyers in America*®. For these reasons, LeavenLaw and its lawyers possess the knowledge and insight necessary to conduct this litigation on behalf of Plaintiffs and the proposed classes. *See* Declaration of J. Andrew Meyer in Support of Motion for Class Certification, attached hereto as **Exhibit B**.

Further, Mr. J. Andrew Meyer focuses his practice on consumer class action litigation and he has spent over half of his nineteen-year career serving as a plaintiffs' class action lawyer. Mr. Meyer been appointed by the court as counsel for plaintiffs in several nationwide consumer class action cases, including *DeHoyos v. Allstate Insurance Company*, Civil Action No. 5:01-1010

(Western District of Texas), *Healey v. Allianz Life Insurance Company*, Civil Action No. 2:05-8908 (Central District of California), and *Hill v. Countrywide*, Case No. A-0178441 (Texas 58th District Court, Jefferson County). More recently, he has been appointed as co-lead class counsel in the case *In re TracFone Unlimited Service Plan Litigation,* Case No. 13-cv-03440-EMC (District Court for the Northern District of California) and class counsel in the case *In re Black Farmers Discrimination Litigation*, Misc. No. 08-ML-0511-PLF (District Court for the District of Columbia). Mr. Meyer is also presently serving as co-lead counsel in an MDL case, *In re Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, Case No. 14-md-2513-RGS (District Court for the District of Massachusetts). Mr. Meyer has served as co-lead counsel for classes of Florida consumers in *Paugh v. Walgreen Company*, Case No. 1:12-cv-21229-JEM (Southern District of Florida), *Lieber v. Bank of America, N.A.*, Case No. 2012-3622-CI-91S (Florida 6th Circuit Court, Pinellas County), and *Algarin v. Tivoli Community Developers, Inc.*, Case No. 2008-CA-000193-O (Florida 9th Circuit Court, Orange County). Mr. Meyer was also appointed as a member of the Plaintiffs' Steering Committee in the case of *In Re: Apple iPhone 3G and 3GS "MMS" Marketing and Sales Practices Litigation*, MDL No. 2116 (Eastern District of Louisiana). *See* Declaration of J. Andrew Meyer in Support of Motion for Class Certification, attached hereto as **Exhibit B.**

Based upon the qualifications of Mr. Meyer and Mr. Leavengood outlined above, the Court should find Mr. Meyer and Mr. Leavengood are adequate to serve as class counsel under Rule 23(a). *Id.*; *see also Garcia-Celestino v. Ruiz Harvesting, Inc.,* 280 F.R.D. 640, 647 (M.D. Fla. 2012) (finding class counsel adequate on the basis that counsel was experienced in class action litigation, and particularly in the subject of the pending litigation); *Mills v. Foremost Ins. Co.*, 269

F.R.D. 663 (S.D. Fla. 2010) (court found adequacy of representation of counsel based on the "experience and specialties" represented in affidavits of class counsel).

With respect to the named Plaintiffs they are similarly situated with all other Class Members, do not have any interests antagonistic to other class members' interests, and have a personal stake in this litigation. Accordingly, Plaintiffs' interests are coincident with, and are not antagonistic to, the putative Class Members' interests. For these reasons, the Court should find that Plaintiffs satisfy adequacy requirement of Rule 23(a)(4).

E. **The Settlement Class Satisfies the Predominance Requirement of Rule 23(b)(3)**

To satisfy the predominance requirement, the issues in the class action that are subject to generalized proof, and therefore applicable to the class as a whole, predominate over the issues subject only to individualized proof. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (citations omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Windsor*, 521 U.S. at 623. The predominance inquiry thus focuses upon the legal or factual questions that qualify each class member's case as a genuine controversy and, therefore, is a far more demanding requirement than the commonality requirement under Rule 23(a). *Jackson*, 130 F.3d at 999 (citation omitted). Indeed, predominance requires more than just the presence of common issues. The common issues must actually outweigh and predominate over any individualized issues involved in the litigation. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 518 (S.D. Fla. 2013).

"Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein*, 211 F.3d at 1234 (citations omitted). Accordingly, the determination of whether questions of law or fact common to class members predominate necessarily starts with the

8

elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Haliburton Co.*, 131 S.Ct. 2179, 2184 (2011). In this instance, Plaintiffs allege that Defendants violated the FDCPA and FCCPA through their use of form debt collection letters. *See,* DE 1, generally. To prevail on a claim under the FDCPA, a plaintiff must demonstrate that (1) he or she was the object of collection activity arising from consumer debt; (2) the defendant is a debt collector, as defined by the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA. *See McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008). "The FCCPA has parallel requirements [to the FDCPA] to state a claim." *Ziemniak v. Goede & Adamczyk, PLLC*, 11-62286-CIV, 2012 WL 5868385, *2 (S.D. Fla. 2012).

In the present case, the issues of whether the Defendants are debt collectors engaged in collection activity constituting an act or omission prohibited by the FDCPA are issues common to Plaintiffs as well as the members of the proposed class. Furthermore, the claims of Plaintiffs and the class members derive from the same legal theories, involve the same collection letters and warrant the same statutory damages as a remedy. *See, e.g., Gaalswijk-Knetzke* 2008 WL 3850657, at *4 ("[T]he Court finds that all of the claims of the named Plaintiff and the class members are based on the same legal theories, the same form collection letters, and the same remedy-statutory damages."); *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 671 (S.D. Fla. 2014) ("Because the main issue in dispute in this case is whether form letters sent to Plaintiff and all other class members violate the FDCPA and FCCPA, common issues predominate." (citation omitted)); *Klewinowski v. MFP, Inc.*, No. 8:13-cv- 1204-T-33TBM, 2013 WL 5177865, at *4 (M.D. Fla. Sept. 12, 2013) (finding that the requirement of predominance had been met where the plaintiff and all members of the putative class were the subject of the same collection activity and the common question to be decided was whether a collection letter violated the FDCPA); *Fuller*, 197

F.R.D at 700-01 (determining that the plaintiff met the requirements of Rule 23(b)(3) where the essential factual link between all of the prospective class members was the letters sent by the defendants and the basis for the plaintiffs' claim was the language and content of the letters). Because common issues of fact and law outweigh any individualized inquiries in this matter, the predominance requirement has been satisfied.

      **F.**      **The Settlement Class Satisfies the Superiority Requirement of Rule 23(b)(3)**

Under Rule 23(b)(3), the superiority analysis focuses upon the relative advantages of proceeding as a class action suit over any other forms of litigation that might be realistically available to a moving party. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010).

Here, given the large number of claims, the relatively small amount of damages available, the desirability of consistently adjudicating the claims, the high probability that individual members of the proposed classes would not possess a great interest in controlling the prosecution of the claims, and the fact that it would be uneconomical to litigate the issues individually, a class action is the superior method by which the Plaintiffs' and the class members' claims under the FDCPA should be adjudicated. *See, Muzuco*, 297 F.R.D. at 522; *see also, Klewinowski*, 2013 WL 5177865, at *5 (finding that the large number of claims, the relatively small statutory damages, desirability of adjudicating the claims consistently, and the probability that individual members would have little interest in controlling the prosecution of FDCPA claims indicated that a class action would be the superior method of adjudication). Indeed, the FDCPA contemplates the maintenance of class actions by plaintiffs. 15 U.S.C. § 1692k(a)(2)(B); *see Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress, however did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the

contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action." (internal footnote, internal quotation, and citation omitted)). Accordingly, a class action is the superior method for proceeding in this action.

### III. THE TERMS OF THE SETTLEMENT AGREEMENT ARE FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED BY THE COURT

Federal Rule of Civil Procedure 23(e) requires court approval for any compromises of a class action. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). In determining whether to approve the Settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits. *See*, *e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). This rule has particular force regarding class action lawsuits. *Cotton*, 559 F.2d at 1331 (citation omitted). Indeed, the settlement of class action cases prior to trial is strongly favored. *See, e.g. Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002).

In considering a proposed settlement of a class action, federal courts generally follow a two-step process, the first step relating to preliminary approval and the second step relating to final approval. *Annotated Manual for Complex Litigation* at § 21.632. The first step in determining whether to grant preliminary approval to a class settlement is for "the Court [to] make[] a preliminary fairness evaluation of the proposed settlement." *Cope v. Duggins*, 2001 WL 333102, *1 (E.D. La. April 4, 2001). The Court must "evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing." *Id.* In so doing, the Court "will examine the submitted materials and determine whether the proposed settlement appears fair on its face." *Id. See also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).

A proposed settlement should be preliminarily approved if it "is 'within the range of possible approval' or, in other words, [if] there is 'probable cause to notify the class of the proposed settlement.'" *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. 2007) (internal citations omitted). The Court's review at the preliminary approval stage should be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *Rutstein v. Avis Rent- A-Car Sys.*, 211 F.3d 1228, 1233 (11th Cir. 2000).

For the reasons detailed below, the Court should find that the parties' Settlement Agreement is not the product of fraud or collusion but instead provides meaningful relief to the proposed Settlement Class and, taken as a whole, is fair, reasonable and adequate to all concerned.

A.  **Summary of the Terms of the Settlement Agreement**

Under the terms of the Class Action Settlement Agreement and subject to court approval, the Defendants shall pay each Class Member who does not opt out of the Class Action Settlement a pro rata share of a settlement fund consisting of six thousand dollars ($6,000.00). The amount of the fund is based upon information on Defendants' net worth provided to Plaintiffs' counsel during the Parties' settlement negotiations. The size of the settlement fund represents the full amount such fund could be under the applicable caps on statutory damages on a class-wide basis under the FDCPA and FCCPA. 15 U.S.C. §1692k; Fla. Stat. §559.72. Class Members need not submit claims to receive payment, but instead, all class members, except those who opt-out, will be sent settlement checks. To the extent that any checks are not cashed within 30 days of the last void date, the amounts remaining in the fund will be paid to Gulf Coast Legal Services (St. Petersburg office), a legal aid organization as a *Cy Pres* award for use towards providing legal services to the

underprivileged. Defendants have also agreed to pay the named Plaintiffs a one thousand dollars ($1,000.00) each in statutory damages as well as an additional five hundred dollars ($500.00) each as a service award, subject to Court approval, for their role in advancing this litigation.

In addition to monetary relief, the Defendants have agreed to stop using the letter at issue in the case which Plaintiffs claimed violated the law. Defendants have further agreed to refrain from sending future correspondence to consumer debtors in an attempt to collect a consumer debt in which Defendants claim, attempt or threaten to enforce a debt while knowing that the debt is not legitimate.

Finally, the Defendants have agreed to pay Twenty-Nine Thousand Dollar and 00/100 Cents ($29,000.00) to Class Counsel, LeavenLaw for attorneys' fees and costs. This amount is to be paid in additional to the amount paid to the Plaintiffs as class representatives and separate and apart from the settlement fund.

The parties have agreed that Defendants will retain and pay a Claims Administrator, who shall have responsibility for providing notice of the class action to class members and for sending settlement checks to all class members except those who validly opt-out of the class.  The Claims Administrator shall cause to be mailed by First Class U.S. Mail: (1) the Class Notice and Opt-Out Form, and (2) the settlement checks. Defendants shall pay the costs of providing the Notice of Class Action and Claim Form to each of the Class Members at their last known address as well as the costs of distributing the settlement check to those Class Members who do not opt out of the settlement.

The Parties have agreed on the form of noticed to be used, which is attached to the Settlement Agreement (Exhibit A hereto) as Exhibit 1.  Notice will be sent to Class Members via first class mail, and given that the Settlement Agreement provides for direct notice to Class

Members, the Parties have agreed that no further notice to the Class should be required. The Parties have agreed that the Notice to Settlement Class Member of Proposed Class Action Settlement shall be mailed to the Settlement Class Members upon approval by the Court. The Parties have agreed on the proposed Order Granting Preliminary Approval of Class Settlement, which is attached to the Settlement Agreement (Exhibit A hereto) as Exhibit 2.

### B. The Settlement Was Not the Product of Collusion

There is a presumption of good faith in the negotiation process. *See Hemphill v. San Diego Ass'n of Realtors, Inc.,* 225 F.R.D. 616, 621 (S.D.Cal.2005). Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion. *See, e.g. See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 470 (S.D.Fla.2002).

In the present case, the Parties' Agreement is the result of appropriately arms-length and adversarial negotiations. The Parties settled only after first engaging in active and contested litigation in this court, including Plaintiffs researching, preparing, and filing a motion for class certification, albeit a motion filed at the preliminary stages of the case. Where a case proceeds adversarially, this counsels against a finding of collusion. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (citing *Ingram v. The Coca–Cola Co.,* 200 F.R.D. 685, 693 (N.D.Ga.2001)). The Parties ultimately settled the case only after mediation with a well-regarded mediator, Mary Lau. The Parties were assiduous in negotiating and reaching agreement as to terms of the relief to the class first before turning to negotiations regarding a service award and attorneys' fees. Accordingly, the Court should find the Agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties. *See Saccocccio*, 297 F.R.D. at 692.

### C. The Terms of the Settlement Are Fair, Reasonable and Adequate and Should be Preliminarily Approved

There are a number of factors the Court should consider in determining whether a settlement is fair, adequate, and reasonable:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which settlement was achieved.

*Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984). In undertaking this analysis, however, the court "should be hesitant to substitute his or her own judgment for that of counsel." *In re Smith,* 926 F.2d 1027, 1028 (11th Cir.1991), and the trial judge should weigh "the overriding public interest in favor of settlement" when reviewing the settlement agreement. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977); *Saccoccio*, 297 F.R.D. at 691-92.

Here the proposed settlement's terms more than support the Court finding, at least preliminarily, that the settlement is fair, reasonable and adequate. Under the first three *Bennett* factors, the Settlement Agreement represents a significant recovery for the Class given the caps on class-wide statutory damages under the FDCPA and FCCPA. In particular, statutory damages under either statutory scheme may not exceed the "lesser of $500,000 or one per centum of the net worth of the debt collector." 15 U.S.C. §1692k; Fla. Stat. §559.72. Based upon the information Plaintiffs learned during informal discovery, the $6,000.00 fund represents the most that the Class could recover under these caps had they taken the case to trial and prevailed. In addition, Defendants have agreed to cease using the offending letter as a part of the settlement of this matter, which again, represents the best possible outcome to Plaintiffs on their request for injunctive relief in the Complaint. In addition, the Settlement Agreement requires Defendants to mail checks to all Class Members, except those who opt-out, without the requirement of any cumbersome claims

process that might prevent those Class Members from obtaining relief. Given the number of individuals in the Class, the amount of the settlement fund will result in each Class Member receiving approximately $10.00. This amount is more than a *de minimus* recovery. Under these circumstances, then, the proposed settlement is fair, reasonable and adequate, as Plaintiffs are obtaining through settlement virtually the same relief they could hope to obtain had they prevailed at trial in the matter.

The fourth and sixth *Bennett* factors also support the Court finding the settlement to be fair, reasonable and adequate in that even though the Parties agreed to settle this matter at an early stage of the litigation. As stated above, the relief afforded to the Class is virtually identical to the relief the Class could expect to receive had Plaintiffs prevailed on their claims through further litigation. Early settlement on such terms is an appropriate method to minimize the expense and delay associated with litigation while at the same time furthering the legislative goals of private enforcement of the FDCPA and FCCPA.

The fifth *Bennett* factor, the substance and amount of opposition to the settlement, need not come into play in the Court's analysis at this preliminary stage. Instead, the Court should preliminarily approve the settlement so that Class Members may be notified of the settlement's terms and have an opportunity to raise any such objections. The Court can then assess this fifth *Bennett* factor at the final approval hearing.

The proposed *cy pres* distribution of unclaimed funds is yet another factor contributing to the overall fairness, reasonableness, and adequacy of the proposed settlement. *Cy pres* distributions are commonly utilized for unclaimed funds. *See e.g. Nelson v. Greater Gadsden Hous. Auth.,* 802 F.2d 405, 409 (11th Cir.1986) (in class action involving utility allowances to tenants in a public-housing complex, affirming court approval of a settlement in which defendant

utilized unclaimed settlement funds to increase energy efficiency of the apartment units); *Klewinowski v. MFP, Inc.*, 8:13-CV-1204-T-33TBM, 2013 WL 5653402, at *2 (M.D. Fla. 2013); *Battle v. Law Offices of Charles W. McKinnon, P.L.,* No. 2:12–cv–14172–KMM, 2013 U.S. Dist. LEXIS 29263, at *15 (S.D. Fla. Mar. 5, 2013) (preliminarily approving a class action settlement in a FDCPA case in which "any funds from uncashed, expired settlement checks ... will be paid over as a cy pres award ... to be distributed to Florida Rural Legal Services, Inc."). Here, the use of Gulf Coast Legal Services as a *cy pres* beneficiary ensures that the full statutory damages available to the Class are paid even if not all Class Members timely negotiate their checks.

Finally, the judgment of counsel supports the Court finding that the proposed Settlement is fair, reasonable and adequate. Both counsel for the Plaintiffs and Defendants are experienced in this type of litigation, and they believe the present settlement should be approved by the Court.

### D. The Proposed Notice Meets the Requirements of Due Process and Rule 23 and Should Be Approved by this Court.

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173-77 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). In the present case, the Parties have agreed to provide direct, first-class mail notice to Class Members, given that the Defendants have sufficient information in their books and records to do so. The proposed form of notice, which is attached as Exhibit 1 to the Settlement Agreement (Exhibit A, hereto), contains all of the information required by Rule 23(c)(2)(B). The proposed notice provides Class Members with information regarding (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an

attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). As such, the Court should approve the proposed notice and direct that notice be provided to the Class by first-class mail in the form of Exhibit 1 to the Settlement Agreement.

## IV.   CONCLUSION

The Parties respectfully request that the Court preliminary certify the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(3):

> "[a]ll person[s] to whom a letter in substantially the same form as either of the letters attached as Exhibit 'A1-A2' to Plaintiffs' Complaint was sent during the two-year period preceding the filing of Plaintiffs' Complaint through the date of this settlement."

In addition, the Parties request that the Court approve the proposed notice as attached as Exhibit 1 to the Settlement Agreement, as the notice contains all of the information required by Federal Rule of Civil Procedure 23(c)(2)(B).

Finally, the Parties request that the Court enter a preliminary approval order substantially in the same form as Exhibit 2 to the Settlement Agreement.

WHEREFORE, the Parties respectfully requests an order from this Honorable Court: (1) certifying the proposed Class for settlement purposes; (2) preliminarily approving the proposed Class Settlement Agreement; (3) appointing Plaintiffs' counsel as counsel for the class; (4) directing notice to be sent to the Class via first class mail; and (5) setting dates for opt-outs, objections and a hearing under Federal Rules of Civil Procedure 23(c)(2).

Respectfully submitted by:

| | |
|---|---|
| **LEAVENGOOD, DAUVAL, BOYLE & MEYER, P.A.** | **GOLDEN SCAZ GAGAIN, PLLC** |
| */s/J. Andrew Meyer* | */s/Benjamin W. Raslavich* |
| **J. Andrew Meyer, Esq., FBN 0056766** | **Jeff Albinson, Esq., FBN 525261** |
| **Ian R. Leavengood, Esq., FBN 10167** | **Benjamin W. Raslavich, Esq., FBN 102808** |
| Northeast Professional Center | 201 North Armenia Avenue |
| 3900 First Street North, Suite 100 | Tampa, FL 33609 |
| St. Petersburg, FL 33703 | Phone: (813) 251-5500 |
| Phone: (727) 327-3328 | Fax: (813) 251-3675 |
| Fax: (727) 327-3305 | jalbinson@goldenscaz.com |
| ameyer@leavenlaw.com | braslavich@goldenscaz.com |
| ileavengood@leavenlaw.com | *Attorneys for Defendants* |
| *Attorneys for Plaintiffs* | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/J. Andrew Meyer*
J. Andrew Meyer, Esq.