UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEORGE and IRIS NARVAEZ,
*on behalf of themselves and all others similarly situated,*

    Plaintiffs,

v.

LAW OFFICES OF ANTONIO DUARTE, III, P.A., *a Florida Profit corporation,* ANTONIO DUARTE, III, *an individual*,

    Defendants.
_____/

CASE NO.: 8:14-cv-01646-VCM-MAP

### JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

COME NOW, the Parties in the above styled action, by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 23, and hereby file this Joint Motion for Final Approval of Class Action Settlement, and state the following in support thereof:

**I.    Background / Procedural History.**

Plaintiffs initiated this action against Defendants on July 3, 2014 by filing their Class Action Complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559, *et seq.* ("FCCPA"). *See,* DE 1, generally. Specifically, Plaintiffs allege that Defendants' use of form debt collection letters violates the FDCPA and FCCPA. *Ibid.* Plaintiffs also filed a motion for class certification with their complaint. *See,* DE 4.

After Defendants answered the Complaint, the Parties began to discuss the possibility of settlement. Plaintiffs' counsel requested information from Defendants that they believed was

necessary to negotiate the terms of a potential class-wide resolution of the case. Defendants' counsel ultimately provided this information. On November 20, 2014, the Parties engaged in mediation. At mediation, the Parties reached an agreement to settle this case on a class-wide basis, subject to court approval. *See,* DE 28. Thereafter, the Parties executed a formal Class Action Settlement Agreement ("the Settlement Agreement") which memorializes the terms of the settlement. *See,* DE 39-1.

On March 20, 2015, the Parties filed a Joint Motion for Preliminary Approval of Class Action Settlement in which the Parties requested the Court certify the proposed Class for settlement purposes, preliminarily approve the Settlement Agreement, direct notice to the Class and set dates for opt-outs, objections, and a hearing under Federal Rule of Civil Procedure 23(c)(2). *See,* DE 39. On March 25, 2015, the Court entered an Order preliminarily approving the Settlement Agreement, directing notice to the class, setting a date for opt outs and objections, and directing the Parties to move for final approval of the Settlement Agreement. *See,* DE 41.

Through the instant Motion, the Parties respectfully request the Court enter a final order approving the terms of the Settlement Agreement.

**II.     Terms of the Settlement Agreement.**

Pursuant to the term of the Settlement Agreement, the Parties have agreed for settlement purposes as follows:

A. <u>Settlement Class</u>: The Settlement Class consists of "[a]ll persons to whom Defendants sent a letter in substantially the same form as either of the letters attached as Exhibit 'A1-A2' to Plaintiffs' Complaint during the qualifying period." For purposes of the Settlement Agreement, the term "Qualifying Period" shall mean July 3, 2012, through February 10, 2015.

B. <u>Payment to Class Members</u>: The Defendants shall pay each Class Member who does not opt out of the Class Action Settlement a pro rata share of a settlement fund consisting of six thousand dollars ($6,000.00).

C. <u>Payment to Class Representatives</u>: Defendants shall pay the named Plaintiffs one thousand dollars ($1,000.00) each in statutory damages as well as an additional five hundred dollars ($500.00) each as a service award.

D. <u>Payment to *Cy Pres*</u>: To the extent that any checks are not cashed within 30 days of the last void date, the amounts remaining in the fund will be paid to Gulf Coast Legal Services (St. Petersburg office), a legal aid organization as a *Cy Pres* award for use towards providing legal services to the underprivileged.

E. <u>Equitable Relief:</u> In addition to monetary relief, the Defendants have agreed to stop using the letter at issue in the case which Plaintiffs claimed violated the law. Defendants have further agreed to refrain from sending future correspondence to consumer debtors in an attempt to collect a consumer debt in which Defendants claim, attempt or threaten to enforce a debt while knowing that the debt is not legitimate.

F. <u>Cost of Settlement Administration</u>: Defendants have paid the costs of the Settlement Administration, including but not limited to, the cost and expense of class notice and administration of the settlement funds.

G. <u>Attorneys' Fees and Costs</u>: Defendants have agreed to pay Twenty-Nine Thousand Dollar and 00/100 Cents ($29,000.00) to Class Counsel, LeavenLaw for attorneys' fees and costs. This amount is to be paid in addition to the amount paid to the Plaintiffs as class representatives and separate and apart from the settlement fund.

*See,* DE 39-1.

### III.  Details of Settlement Administration.

In its Order preliminarily approving the Settlement Agreement, the Court approved the proposed form of Class Notice and directed the Claims Administrator to send actual notice to the last known addresses of the Class Members according to Defendants' records, as updated by a National Change of Address search. On May 11, 2015, Class Notice was sent in accordance with the Court's Order. As of June 25, 2015, the deadline imposed by the Court for Class Members to opt out or exclude themselves from the Settlement, no requests for exclusion were received by Defendants' Counsel or Class Counsel. As of June 30, 2015, the deadline imposed by the Court for Class Members to object to the Settlement Agreement, no objections were received by Defendants' Counsel or Class Counsel.

### IV.  Legal Standard.

Courts consistently favor settlement of disputed claims. *See Williams v. First National Bank,* 216 U.S. 582 (1910); *Weinberg v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *DuPuy v. Director, Officer of Worker's Compensation Programs*, 519 F.2d 536,541 (7th Cir.1975), *cert. denied*, 424 U.S.965 (1976). Nowhere is this policy more appropriate than in class actions:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Id.*

*See, Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir.1980); *see also, Franks v. Kroger,* 649 F.2d 1216, 1224 (6th Cir.1981) *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir.1982) (law generally favors and encourages the settlement of class actions); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir.1985) *on reh'g, en banc, Secy of Labor v. Fitzsimmons,* 805 F.2d 682 (7th Cir.1986); *Patterson v. Stovall*, 528 F.2d 108, 112 (7th Cir.1976); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D. Ohio 1990); *In re Dun &*

*Bradstreet Credit Service Consumer Litigation,* 130 F.R.D. 366, 371 (S.D. Ohio1990); *In re Domestic Air Transportation Antitrust Litigation,* 148 F.R.D.297, 312 (N.D.Ga.1993) ("settlements of class actions are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits").

In reviewing a proposed settlement, courts should neither substitute their own judgment for that of the parties who negotiated the settlement, nor "reopen and enter into negotiations with the litigants in the hopes of improving the terms of the settlement." *See In re Saxon Securities Litigation,* [1985-86 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶92,414 at 92,525 (quoting *Argo v. Harris,* 84 F.R.D.646, 647-48 (E.D.N.Y.1979)); *see also Enterprise Energy, supra,* 137 F.R.D. at 246 (settlement must be viewed in its entirety and court may not modify individual terms which were the product of negotiations).

As stated by the court in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir.1974):

> It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement … Such procedure would emasculate the very purpose for which settlements are made. The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the "negotiating process by which the settlement was reached." *Weinberger v. Kendrick,* 698 F.2d 61, 74 (2d Cir. 1982). Courts have thus focused on whether the settlement was achieved through "arm's length negotiations" by counsel who have "the experience and ability … necessary to [provide] effective representation of the Class's interests." *Id.; see also Stotts v. Memphis Fire Department,* 679 F.2d 541, 551 (6th Cir.1982); *Granada Investments, Inc. v. DWG Corp.,* 823 F.Supp. 448, 454 (N.D.Ohio1993) (citing importance of arm's length negotiations); *Spencer v. Comserv Corp.,* [1986- 87 Transfer

Binder] Fed.Sec.L.Rep. (CCH) ¶93,124 at 95,530 (D.Minn.1986); *In re Warner Communications Securities Litigation,* 618 F. Supp.735, 741 (S.D.N.Y. 1985), *aff'd,* 798 F.2d35 (2d Cir.1986).

In deciding whether to approve the proposed settlement, this Court must determine whether the proposal is fair, adequate and reasonable. *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984); *Gautreaux v. Pierce,* 690 F.2d 616, 631 (7th Cir.1982); *In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312. *See also Toledo Fair Housing Ctr. v. Nationwide Mut. Ins. Co.,* 94 Ohio Misc.2d 186, 188 (Lucas Co.1998); *Beder v. Cleveland Browns, Inc.,* 758 N.E.2d 307, 114 Ohio Misc.2d 26 (2001).

"[T]here is a strong initial presumption that the compromise is fair and reasonable." *In re Saxon Securities Litigation, supra,* ¶92,414 (quoting *Katz v. E.L.I. Computer Systems, Inc.*, [1970-71 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶92,994 at 90,676 (S.D.N.Y. 1971)). Accordingly, courts exercise restraint in examining a proposed settlement and recognize that "[s]ettlements, by definition, are compromises which need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *In re Saxon Securities Litigation, supra,* ¶92,414 at 92,525 (quoting *Alliance to End Repression v. City of Chicago,* 561 F.Supp. 537, 548 (N.D.Ill.1982)).

An assessment of the fairness, reasonableness and adequacy of a proposed settlement herein requires the court to weigh numerous factors. In this regard, it has been noted:

> It is well established that the court assumes a limited role when requested to approve a class action settlement proposal. While the interests of the class members must be carefully protected … the Court must avoid deciding or trying to decide the likely outcome of a trial on the merits. Approval or disapproval is dependent upon whether, under all of the particular circumstances, the terms reached are fair, reasonable and adequate.

*See In re National Student Marketing Litigation,* 68 F.R.D. 151, 155 (D.D.C.1974) (citations omitted).

V. **Argument.**

    a. **The Class Notice Satisfies the Requirements of Federal Rule of Civil Procedure 23.**

Pursuant to the Federal Rule of Civil Procedure 23(b)(3), the best notice practicable under the circumstances must be sent to apprise class members of the pendency of the suit and advising them of their right to opt-out under Rule 23(c). The rule further requires that the notice for a (b)(3) class concisely and clearly state in plain, easily understood language *inter alia* the nature of the action, the definition of the class certified, the right to exclude and object, and the binding effect of the class judgment. Fed.R.Civ.P. 23(c)(2)(B).

In the instant case, the Court approved the form and content of the Class Notice via the entry of the preliminary approval Order. The Class Notice informed the Class Members of the material terms of the settlement and well as the right of class members to opt out or object to the terms of the Settlement Agreement. As such, the content and form of the Class Notice satisfied the requirements of Rule 23(c)(2)(B).

Rule 23(c) requires that "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." When a potential class member's address is known or is readily available with reasonable effort, individual notice by mail is required. *Eisen v. Carlyle & Jacquelyn*, 417 U.S. 156, 173 (1974). Rule 23 does not require the parties to exhaust every conceivable method of providing notice to the individual class members. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir.1985).

In the instant case, the Class Notice was sent to the last known address of each class member, as updated by a National Change of Address search, via First Class U.S. Mail. As such, each Class Member has been sent "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

    b. **The Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23**

In its March 25, 2015, order granting preliminary approval of the Parties' settlement, the Court certified a settlement class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). [Docket No. 41]. In so doing, the Court found that the proposed settlement class meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and the predominance and superiority requirements of Rule 23(b)(3). The record in this case supports the Court's findings in its preliminary approval order, and the Parties submit that the Court should reaffirm in its final approval order that a settlement class is appropriately certified for all the reasons detailed in the Court's preliminary approval order.

### c. The Proposed Settlement is Fair, Adequate and Reasonable.

#### i. Federal law supports approval of class action settlement agreements that are fair, adequate and reasonable.

Judicial approval of class action settlements requires a two-step process. In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible judicial approval." *H. Newberg, Newberg on Class Actions* (3d Ed. 1993) §11.25, p.11-37. Once the settlement is found to be within the range of possible approval, a final approval hearing is scheduled and notice is provided to the class. *Id*. The second step involves final determination, following a hearing at which pertinent evidence and any objections by class members may be considered, that the settlement is fair, reasonable and adequate from the standpoint of the class. *Id*. at §11.41.

*In Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the District Court described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law. *Miller v. Republic National Life Insurance Company*, 559 F.2d 426 (5th Cir. 1977). The Court is required to make a two-part determination that: 1) there is no fraud or collusion in reaching settlement, and 2) the settlement is fair, adequate and reasonable. *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984).

*Id*. at 1054.

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court. *Bennett*, 737 F. 2d at 987. In making this determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Furthermore, in determining whether a proposed settlement is fair, adequate and reasonable, this Court should consider the following seven factors:

> (1) the likelihood of success or recovery;
>
> (2) the range of possible recovery;
>
> (3) the settlement terms and conditions, and how the terms compare with the possible range of discovery;
>
> (4) the complexity, expense and duration of future litigation;
>
> (5) the substance and amount of any opposition to the settlement;
>
> (6) the stage of the proceedings at which settlement is reached;
>
> (7) the recommendations and judgment of experienced counsel and the absence of collusion.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993).

Application of these factors shows that the proposed settlement is fair, adequate, reasonable and in the best interest of the Settlement Class.

### ii. Even with a strong factual and legal case, Class Members face risk in establishing liability.

Although the Class Representatives believe that the claims they have raised are meritorious, the Class Representatives recognize that ultimate success on the merits is by no means assured. During the initial part of this litigation, the Defendants made clear that if this matter were contested, it would vigorously challenge the merits of the claims of the Class Representatives. Defendants have also contended and continue to contend that they have meritorious defenses to the claims asserted.

      **iii. The terms and conditions of the Settlement Agreement provide for the best possible benefit to the Plaintiffs and the Class Members.**

Benefit to the Settlement Class is the fundamental test of the reasonableness of a settlement. Here, the proposed settlement provides remedies directly responsive to the primary relief sought by the Class Representatives. Under 15 U.S.C. §1692k(2)(B)(ii), the recovery of the Class is limited to the lesser of $500,000.00 or 1% of the net worth of the debt collector. Based upon the information Plaintiffs learned during informal discovery, the $6,000.00 fund represents the most that the Class could recover under these caps had they taken the case to trial and prevailed. In addition, Defendants have agreed to cease using the offending letter as a part of the settlement of this matter, which again, represents the best possible outcome to Plaintiffs on their request for injunctive relief in the Complaint.

      **iv. The time and expense of protracted litigation makes settlement appropriate.**

Settlement promotes the interests of the litigants by saving them the expense of trial of disputed issues and reduces the strain on already overburdened courts. *See, Armstrong, supra,* 616 F.2d at 313; *Newman v. Stein,* 464 F. 2d 689, 691-92 (2d Cir.)*, cert. denied, sub nom.; Benson v. Newman,* 409 U.S. 1039 (1972*); Enterprise Energy, supra,* 137 F.R.D. at 247-48 (class action settlement serves interests of both litigants and public by avoiding a time-consuming trial and appeal). This position is especially compelling in light of the potentially modest recovery per class member based on net worth of the Defendants, the class size, and the cap on class action liability imposed by the FDPCA and FCCPA.

      **v. There is no opposition to the Settlement Agreement.**

As noted above, Class Notice was sent via First Class U.S. Mail to the last known address of each Class Member as updated by a National Change of Address registry. In response to this notice, no objections have been raised and no Class Members have opted-out. Based upon the unanimously favorable response to the proposed settlement, there exists no reason to delay final approval.

### vi. The Parties have negotiated the settlement from a well-informed perspective.

In the months following the initiation of this action, the parties developed a substantial appreciation for the merits of their respective positions. Prior to and during mediation, the parties engaged informal discovery, including the exchange of documentation relating numerosity and class damages. Mediation was ultimately successful and concluded with a written mediated settlement agreement. Following mediation, the parties negotiated the terms of a formal Settlement Agreement which was granted preliminary approval by the Court on March 25, 2015.

### vii. Counsel believes that the Settlement Agreement is fair, reasonable and in the best interests of the class.

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312; *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993). In the instant action, Class Counsel has experience in litigating consumer class actions. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *See, Ressler v. Jacobson,* 822 F.Supp. 1551, 1553 (M.D. Fla. 1992). "While the opinion and recommendation of experience counsel is not blindly followed by the trial court, such opinion should be given great weight in evaluating the proposed settlement." *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4$_{th}$ Cir.1975). "Where experienced counsel have engaged in arm's length negotiations to reach a settlement, the trial court is entitled to rely on their judgment." *Spencer, supra,* ¶93,124 at 95,530; *see also Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)(court should defer to judgment of experienced counsel who has competently evaluated the strength of his proofs); *Enterprise Energy, supra,* 137 F.R.D. at 247 (endorsement of settlement by experienced counsel supported fairness, adequacy and reasonableness of settlement); *Ohio Public Interest Campaign v. Fisher Foods,* 546 F.Supp.1, 11 (N.D.Ohio1982) (opinion of counsel to be given great weight by the Court). Indeed, there is a "strong initial presumption" that an arm's length settlement arrived at by experienced counsel,

and premised upon sufficient information to evaluate the claims at issue is fair. *See Feder v. Harrington,* 58 F.R.D. 171 (S.D.N.Y.1972).

Here, the Settlement Agreement is the product of extensive, adversarial, arm's length negotiations conducted by counsel experienced in all aspects of class action litigation, and particularly experienced in the FDCPA context. As discussed above, the proposed settlement offers the Settlement Class all of the relief sought and which could be obtained at trial. Thus, in counsels' view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class. By reaching the proposed settlement, the parties have dispensed with the need for further protracted litigation. Upon final approval, if given, the proposed settlement will have established a significantly faster and guaranteed favorable resolution of the claims at issue.

### viii. The Parties negotiated the Settlement Agreement in good faith.

This lawsuit has been pending since July 3, 2014. The Settlement Agreement was negotiated at arm's length, after several weeks of negotiations following an agreement in principal reached during Court ordered mediation. Detailed settlement negotiations were conducted before the final terms of the Settlement Agreement were reached. Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy. *See, Cleveland Browns, supra,* 758 N.E.2d at 310.

### ix. The Parties have agreed to Class Counsel's Attorney's Fee and Cost Award.

The Parties have reviewed the suggested hourly rates and time sheets for the work performed by Class Counsel and have agreed to an award of $29,000.00 to Class Counsel for attorneys' fees and costs in this case. The Parties agree that this total sum is reasonable and fair given the Lodestar factors applicable in this case. Defendants have agreed to pay said sum within 14 days of the Court's award of attorney's fees and costs or the "Effective Date" as defined by the Settlement Agreement, whichever is later.

### VI.     Conclusion.

For the foregoing reasons, the Court should grant the Parties Joint Motion for Final Approval of the Settlement Agreement.

WHEREFORE the Parties respectfully request an Order from this Honorable Court GRANTING this Joint Motion for Final Approval of Class Action Settlement.

Respectfully submitted by:

| LEAVENGOOD, DAUVAL, BOYLE & MEYER, P.A. | GOLDEN SCAZ GAGAIN, PLLC |
|---|---|
| /s/ *J. Andrew Meyer* | /s/ *Jeff Albinson* |
| **J. Andrew Meyer, Esq., FBN 0056766** | **Jeff Albinson, Esq., FBN 525261** |
| **Ian R. Leavengood, Esq., FBN 10167** | **Benjamin W. Raslavich, Esq., FBN 102808** |
| Northeast Professional Center | 201 North Armenia Avenue |
| 3900 First Street North, Suite 100 | Tampa, FL 33609 |
| St. Petersburg, FL 33703 | Phone: (813) 251-5500 |
| Phone: (727) 327-3328 | Fax: (813) 251-3675 |
| Fax: (727) 327-3305 | jalbinson@goldenscaz.com |
| ameyer@leavenlaw.com | braslavich@goldenscaz.com |
| ileavengood@leavenlaw.com | *Attorneys for Defendants* |
| *Attorneys for Plaintiffs* | |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


                                        */s/J. Andrew Meyer*
                                        J. Andrew Meyer